# Supreme Court of the Navajo Nation

**Herbert J. Pioche, Appellant,**

v.

**Navajo Board of Election Supervisors, Appellee.**
**Decided March 1, 1991**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

John A. Chapela, Esq., Window Rock, Navajo Nation (Arizona), for the
Appellant; and Claudeen Bates Arthur, Esq., Office of Legislative Counsel,
Window Rock, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by BLUEHOUSE, Associate Justice.

This appeal is from a December 13, 1990 decision of the Navajo Board of
Election Supervisors, disqualifying the appellant, Herbert J. Pioche, as a candi-
date and withholding certification of his election for noncompliance with the
Navajo Election Code of 1990.

## I. THE CASE

Following his nomination for Navajo Nation Council delegate by the Lake
Valley Chapter, Herbert J. Pioche ("Pioche") filed his official declaration of can-
didacy with the Navajo Board of Election Supervisors ("Board"). The declara-
tion form asks whether the proposed candidate had been convicted of any offense
set out in 11 N.T.C. § 8.B.4 within the past five years. It is a provision of the
Navajo Election Code of 1990 which fixes the qualifications for delegates to the
Navajo Nation Council. It states as follows:

> Must not have been convicted of any misdemeanor involving crimes of deceit,
> untruthfulness and dishonesty, including but not limited to extortion, embez-
> zlement, bribery, perjury, forgery, fraud, misrepresentation, false pretense,
> theft, conversion, or misuse of Tribal funds and property, and crimes involving
> the welfare of children, child abuse, child neglect, aggravated assault and
> aggravated battery within the last five (5) years. Must not have been found in
> violation ... of the Navajo Ethics in government [sic] or Election Laws.

Pioche checked the box for "no" on his declaration form.

On July 6, 1990, the Board adopted Resolution No. BOESJY-013-90, certify-
ing eligible candidates for the upcoming August 7, 1990 primary election, and

Pioche was one of them. As a result of the vote in that primary, Pioche went on to run in the general election of November 6, 1990. In the general election he received 40% of the Lake Valley, Standing Rock, and White Rock Chapter votes, ahead of the runner-up, who received 31.49% of the votes. Board Resolution No. BOESD-041-90 (December 1, 1990) .

On November 16, 1990, Gilbert Rogers filed a statement of grievance with the Board, complaining that Pioche had been previously convicted of aggravated assault in the Crownpoint District Court in July of 1987, and that some time in 1982 Pioche had converted Lake Valley Chapter property to his own use.

After service of a copy of the grievance upon Pioche, the Board held a hearing on December 13, 1990. The conversion allegation was dropped at the hearing. After hearing testimony and receiving evidence, the Board voted to withhold certification of Pioche as the Navajo Nation Council delegate for the Standing Rock, White Rock, and Lake Valley Chapters. The decision of the Board was rendered in a December 18, 1990 letter from the acting program director of the Navajo Election Administration (the Board's administrative arm). The letter states:

> The basis of this decision stemmed from the fact that you are in violation of 11 NTC Section 8.B.5. The facts brought out in the hearing established that you intentionally caused grave harm to a fellow resident of Lake Valley Chapter, Gilbert Rogers. These deliberate acts go directly against the moral obligations and the standard of conduct expected of an elected official.

> The record of assault is a violation of 11 NTC Section 4 which but [sic] is not limited to the crimes enumerated. This violation was not disclosed by you on the Declaration of Candidacy form. This is an additional non-compliance.

On appeal Pioche argues that he was convicted of battery, not aggravated assault, and he had no prior notice that the Board would consider nondisclosure as a basis for his disqualification. As this appeal developed, the Board also relied upon a contempt judgment rendered against Pioche. Pioche complains that such reliance was not clearly set out in the written Board decision and, again, that he had no fair notice of such a charge prior to the hearing. The Board contends that its decision was correct in both fact and law. The issues necessary to decide the appeal are as follows:

1. Whether the Board interpreted the council delegate qualification provisions of the Navajo Election Code of 1990 consistent with Navajo Nation law?

2. Whether the Board's decision was sustained by sufficient evidence on the record, as required by 11 N.T.C. § 321.B.4 (1990)?

## II. SCOPE OF BOARD POWERS

The Navajo Board of Election Supervisors has existed under various names over the years, and there have been several recent changes in Navajo Nation law which have restated its powers. In 1989, the Navajo Nation Council enacted

Resolution No. CD-68-89, "Amending Title Two (2) of the Navajo Tribal Code and Related Actions" (December 15, 1989). That resolution made the Board an independent entity within the legislative branch of the Navajo Nation government, responsible only to the Navajo Nation Council. 2 N.T.C. § 871. The amendments provide that one of the enumerated powers of the Board is, "To establish rules and regulations and to interpret the Election Code consistent with Tribal laws." 2 N.T.C. § 873(b)6. Another enumerated power is, "to initiate disqualification of candidates who do not meet the requirements and to initiate recounts of ballots, where necessary." 2 N.T.C. § 873(b)13. The election laws were revised in the Navajo Election Code of 1990, and these powers are restated in that law. 11 N.T.C. § 321.A.6 and 13.

The Board, here, officially claims to have refused to certify Pioche's election as a delegate, because it discovered, after the general election, that he was not qualified to be a candidate. The record of this case, however, bears out the conclusion that the Board in essence decertified Pioche, having already certified his election in its Resolution of December 1, 1990. Pioche does not question the Board's authority to decertify an already elected official of the Navajo Nation, so that issue is not properly before us today. However, in passing we note that the Board's assumption that it has the power to decertify elected officials is not supported by a reading of any of the statutory basis for its authority to act.[1]

Turning to the matter of the Board's interpretation of the language of the qualification statute, the record is clear that on July 15, 1987, the Crownpoint District Court entered a judgment finding Pioche in contempt of court, and on July 16, 1987, that same court adjudged him guilty of the offense of battery, in violation of 17 N.T.C. § 316. Case No. CP-CR-1891-87. The question which arises is what the Navajo Nation Council intended in 1989 and 1990 when it granted the Board power to disqualify candidates.

The Board chose to look behind the Crownpoint District Court judgments to see if Pioche's actions fell within the meaning of the qualification statute. It heard testimony regarding the contempt judgment to determine whether there was a conviction for a crime of deceit, untruthfulness, or dishonesty. It also heard testimony regarding the battery judgment to determine whether there had been an "aggravated assault." The Navajo Nation Council did not intend that the Board could undertake such a retrial of criminal charges.

The statute, 11 N.T.C. § 8.B.4 is vague, ambiguous, and inconsistent. It is, as conceded by the counsel for the Board, "inartfully drafted." It appears to estab-

---

1. The Board is required to certify the results of an election not less than ten days following an election. 11 N.T.C. § 85. The Board complied with that mandate when it certified the results of the November 6, 1990 election on December 1, 1990. Conditional or "subject to recall" certification is neither expressly nor impliedly authorized within Section 85 or any other section of the Election Code. Likewise, there is no express or implied authority granted to the Board to decertify an elected official of the Navajo Nation. The Election Code expressly provides remedies to apply to people in Mr. Pioche's situation. There is removal for just cause or recalling elected officials. *See* Section 321 A.19, 22 and Sections 240 and 241. When there is a remedy already fashioned in the Election Code, the Board cannot elect to fashion one (decertification) more to its liking.

lish four categories of offenses or violations which disqualify individuals from serving as a council delegate. They are (1) Crimes of deceit, untruthfulness and dishonesty; (2) Crimes involving the welfare of children; (3) Aggravated assault and aggravated battery; and (4) Violations of the Navajo Nation Ethics in Government Law or the Navajo Election Code of 1990.

The first category, crimes of deceit, untruthfulness and dishonesty, has examples of such crimes, but the category is not limited to the enumerated offenses. The second category, crimes involving the welfare of children, could be limited to child abuse and child neglect. The aggravated assault and aggravated battery offenses could be interpreted to relate only to crimes involving the welfare of children, given their placement in the first sentence of the section. The Board interprets the statute to provide for disqualification for those offenses, regardless of the age of the victim. That is a reasonable interpretation of the statute, despite the inartful drafting of it. It is unclear what procedure must be followed to determine that a prospective candidate has "been found in violation" of the ethics or election codes. Finally, it is unclear what the period of disqualification may be. Does the five-year disqualification period apply to the offenses listed in the first sentence, or to the offenses involving the welfare of children, or to aggravated assault and aggravated battery or to the entire statute? The Board interprets the statute to cause a five-year disqualification for any of the offenses recited within it. The statute is obviously vague, and only reasonable interpretations of it by administrative application saves it from being void for vagueness.

The Board points to its powers to interpret the Navajo Election Code of 1990 pursuant to 2 N.T.C. § 873(b)6 and 11 N.T.C. § 321.A.6, asserting that because the Navajo Nation Council granted the Board such power, its statutory interpretations are beyond review of this Court. This is not a correct reading of the law. The Board's power of interpretation is limited by the words which follow, "… consistent with Tribal laws." The statute means that if the Board arrives at a conclusion of law which is not consistent with the law of the Navajo Nation, that conclusion is beyond the power of the Board, as granted by the Navajo Nation Council. This reading of the plain words of the statute avoids the difficulty of finding that there has been an unlawful delegation of power to a legislative entity, violating the principle of separation of powers. When the Council reenacted the Board's powers, it did so in a law which firmly established the separation of governmental powers. If the Board had the final power to interpret a part of the law of the Navajo Nation, that would infringe upon the plenary power of the courts to do so. Another consideration is that the Board conceded that the courts have jurisdiction to remedy violations of the Navajo Nation Bill of Rights. We have previously held that the failure of a governmental body to follow its own laws violates due process rights. *Nez v. Bradley*, 3 Nav. R. 126, 131 (1982). Therefore, we decide whether the Board interpreted the statute consistently with Navajo Nation law, and whether it violated its own law.

We follow the general principle of statutory construction that we must con-

strue the statute on its face. Legislatures have the power to provide that the commission of crimes of moral turpitude may disqualify one from being a candidate for public office. The Navajo Nation Council has that power. The intent of the Council in addressing crimes of deceit, untruthfulness, and dishonesty is clear, and it intended to list only a few examples of the crimes which fall into that category. While the offenses of aggravated assault and aggravated battery follow closely the crimes involving the welfare of children, it is reasonable to conclude that the Council intended them to be independent of injuries to children. The general flow of the statute is, as to these offenses, that upon conviction of any such crime, a person is disqualified from being a candidate for council delegate for five years. The opening words of the sentence, "convicted of any misdemeanor," are plain, and they require only proof of a conviction. While the declaration of candidacy form asks about Navajo Nation convictions only, it is clear that the Council intended that a conviction for any such misdemeanor in any court of competent jurisdiction is a bar to office.

Only courts of law have jurisdiction to convict an individual of a misdemeanor. The Board cannot, as a matter of law, retry individuals for offenses or initiate original quasi-criminal proceedings. Therefore, the Board exceeded its jurisdiction by looking behind the district court contempt and battery judgments.

The Board changed a conviction for battery (17 N.T.C. § 316) into one for aggravated assault (17 N.T.C. § 317). The two are different offenses, with the latter involving the use of deadly weapons or concealment. The Navajo Nation Council knew of the criminal laws of the Navajo Nation when it enacted the 1990 election law revisions and it stated what it intended. The disqualifying offenses against persons in 11 N.T.C. § 8.B.4 are clearly aggravated assault and aggravated battery.

While the Board does have statutory discretion to interpret election laws, such discretion is limited, and the Navajo Nation Supreme Court has appellate jurisdiction to review whether the Board acted within its statutory discretion. *Johnson v. June*, 4 Nav. R. 79, 82 (1982). General principles of statutory construction are "Tribal laws" within the meaning of the Board's organic statutes. The obvious intent of the Council, as reflected in the poorly drafted statute, was to use court records of certain misdemeanor convictions as proof of disqualification for office. The offenses which fall within the statute are ascertainable, so it is clear that the Board acted outside its discretion, in deciding that Pioche was disqualified by a conviction for battery.

The Board also incorrectly argues that the contempt judgment is a disqualifying conviction under the statute. The grievance does not raise that judgment, Pioche had no notice of it prior to the hearing, and the judgment is not set forth as a ground for decision in the December 18, 1990 decision letter. Despite that, as will be discussed below, there was no showing that the contempt judgment constituted a misdemeanor conviction for a crime of deceit, untruthfulness, or dishonesty.

# III. SUFFICIENT EVIDENCE

The scope of review in election appeals is limited by 11 N.T.C. § 321.B.4, which provides that, "Review by the Supreme Court shall be limited to whether or not the decision of the Board is sustained by sufficient evidence on the record." The statute assumes that the Board has not exceeded its powers in interpreting the election code, and that the facts are sufficient to support a legally correct decision.

The evidence was not sufficient to support the conclusion that the contempt judgment constituted a crime of deceit, untruthfulness, or dishonesty. The evidence that the contempt judgment was for lying consisted solely of Gilbert Rogers' flat statement, "He was totally lying to the Court." Rogers is Pioche's eldest brother by common mother. Rogers' assertion simply is not a proven fact. One can draw the conclusion that there was a family rivalry at the core of his testimony. No court record was produced showing the basis of the contempt judgment, and the sentence upon it was suspended. Assuming that the contempt was criminal (rather than civil), it could have covered a broad range of offenses against the court which do not involve deceit, untruthfulness, or dishonesty. Without a showing of a court determination that the contempt fell within the ambit of the statute, the evidence was insufficient to disqualify Pioche.

Likewise, although Pioche did not have fair notice that he would have to rebut a charge of making a false statement in his declaration of candidacy (which is itself reversible error), there was no proof that he made a false statement. There was no proof of a crime involving deceit, untruthfulness, or dishonesty, and thus no proof Pioche lied in his declaration.

We have attempted to construe a vague statute, saved from invalidity only because it may be reasonably interpreted within the limits of the facts of this case. The Court urges the Navajo Nation Council to undertake a revision of the election code to give future candidates fair and understandable notice of the prerequisites to their exercise of their liberty right to run for public office. *See*, *Bennett v. Navajo Board of Election Supervisors*, 6 Nav. R. 319, 325-327 (1990).

The Board exceeded the scope of its powers and rendered a decision which was not supported by the evidence before it. Accordingly, the December 13, 1990 decision of the Board is reversed. The oath of office shall be administered to Mr. Pioche.